IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JENNIFER DOOLEY                                                        PLAINTIFF

V.                          CASE NO. 3:16-CV-00087-JTK

CAROLYN W. COLVIN, *Acting Commissioner*
Social Security Administration                                         DEFENDANT

## **MEMORANDUM AND ORDER**

Plaintiff, Jennifer Dooley, appeals the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) based on disability[1]. Both parties have submitted appellate briefs, and the case is ready for a decision. The only issue before the Court is whether the Commissioner's decision that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence. For the reasons outlined below, the decision of the Commissioner is affirmed.

### **Procedural History**

Plaintiff protectively filed her application for benefits on November 8, 2012, alleging a disability date of May 30, 2011. (Tr. 178-86) Disability Determination Services (DDS) denied the claims initially and upon reconsideration. (Tr. 45-123) Plaintiff timely requested

---

[1] "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

a hearing before an Administrative Law Judge (ALJ). Following a hearing on September 3, 2013, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 5-23) The Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3) Plaintiff timely sought judicial review of the ALJ's September 3, 2013 decision, and on August 22, 2014, the Court reversed the decision and remanded Plaintiff's claims for further consideration. (Tr. 1073-77) *See Dooley v. Colvin,* No. 3:13cv00259 (E.D. Ark. Aug. 22, 2014).

After remand, the ALJ held a second administrative hearing on Dooley's claims on March 26, 2015. (Tr. 1041-63) The ALJ issued an unfavorable decision on May 14, 2015. (Tr. 809-30) On February 20, 2016, the Appeals Council denied Dooley's request for review. (Tr. 803-08) Thus, the ALJ's March 26, 2015 decision is the final decision of the Commissioner. Plaintiff timely filed this action seeking review of this decision.

## Administrative Proceedings

The ALJ held an administrative hearing on March 26, 2015, in Jonesboro, Arkansas. (Tr. 812) Plaintiff, her attorney, and a vocational expert (VE) attended. (Tr. 812, 1041-63) Plaintiff was 38 years old at the time of the administrative hearing (Tr. 1045) and had not engaged in substantial gainful activity since her alleged onset date. (Tr. 814) She has three years post high school education (Tr. 1045) and past relevant work as a retail sales clerk, cake decorator, and personal care attendant. (Tr. 822) The ALJ considered Plaintiff's

impairments by way of the required five-step sequential evaluation process[2] and found Plaintiff had the severe[3] impairments of: symptomatic human immunodeficiency virus (HIV), Hepatitis C, and depression. (Tr. 814) The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listing. (Tr. 814-15)

In addition, the ALJ determined that Plaintiff had the residual functional capacity[4] (RFC) to perform sedentary work[5] provided interpersonal contact is limited (meaning such interaction is limited to answering simple questions, responding appropriately to supervisors and co-workers, and only infrequent interaction with the public is required and not considered an essential job duty). (Tr. 815) The ALJ also found that the Plaintiff could only perform work if the complexity of tasks can be learned by demonstration or repetition within 30 days, with few variables, and little judgment, and if the supervision required is simple,

---

[2] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment [meets] or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work. Through step four of this analysis, the claimant has the burden of showing that she is disabled. Only after the analysis reaches step five does the burden shift to the Commissioner to show that there are other jobs in the economy that a claimant can perform." *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008) (internal citations omitted).

[3] An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520. An impairment is "nonsevere" when medical or other evidence establishes only a slight abnormality that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521.

[4] The RFC is "the most [a claimant] can do despite" his or her "physical or mental limitations." 20 C.F.R. § 416.945(a) and 20 C.F.R. § 404.1545(a).

[5] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a).

direct, and concrete. *Id.* In making his determination, the ALJ found that while the Plaintiff's impairments could reasonably be expected to cause the symptoms alleged, the statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely credible. (Tr. 820) The ALJ further found that while Plaintiff was unable to perform any of her past relevant work, there are jobs she can perform existing in significant numbers in the national economy (*i.e.*, film inspector (touch-up) of which there are 30,000 nationally and circuit board assembler of which there are 35,000 nationally). (Tr. 822-23) Consequently, the ALJ concluded Plaintiff was not disabled.

## Standard of Review

The Court's limited function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Cox v. Apfel*, 160 F.3d 1203, 1206-07 (8th Cir. 1998) (citing *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)). The Commissioner's decision cannot be reversed merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). However, "[t]he substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). "'Substantial evidence on the record as a

whole' . . . requires a more scrutinizing analysis." *Id.* (quoting *Smith v. Heckler*, 735 F.2d 312, 315 (8th Cir. 1984)). "In reviewing the administrative decision, '[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

## Discussion

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's decision to deny benefits. Specifically, she contends that the ALJ: (1) failed to consider Plaintiff's work absences due to medical appointments and drug side effects; (2) wrongly discredited the opinion of her regular physician; and (3) erred in finding that Plaintiff's mental impairments only limit her to unskilled work. (DE #13 at 20-29) The Commissioner maintains that substantial evidence supports the ALJ's decision that Plaintiff is not disabled. (DE #14)

### A.   WORK ABSENCES

Plaintiff argues that she suffers significant side effects from her medications, and she testified that these side effects prevented her from getting out of bed some mornings due to fatigue and/or nausea and vomiting. (DE #13 at 21-22) She further maintains that her medical conditions cause her to have an unusually high number of medical appointments, including both doctor's appointments and emergency room visits. (DE #13 at 21) The VE

5

testified that there would not be work Plaintiff could perform if she had to miss work two or three times a month. (DE #13 at 22)

Substantial evidence supports the ALJ's determination that Plaintiff could work despite the side effects of her medications and her numerous medical appointments. Subjective complaints "may be discounted if there are inconsistencies in the evidence as a whole, and the ALJ may properly rely upon discrepancies between [a claimant's] allegations of pain and her treatment history, medicinal selections, and daily activities in disregarding her subjective complaints." *Davis v. Apfel*, 239 F.3d 962, 968 (8th Cir. 2011).

The ALJ noted the Plaintiff's symptoms of fatigue and pain in her head and stomach but concluded that her daily activities were not indicative of someone who is completely unable to work. (Tr. 815-816) The ALJ specifically considered the Plaintiff's Adult Function Report dated March 12, 2013, in which Plaintiff reported she was able to take care of her daughter, maintain her personal care, prepare sandwiches twice a week, clean her home, drive a car, ride in a car, shop in stores for groceries, pay bills, count change, use a checkbook, and follow written instructions. *Id.*

Additionally, there is no objective medical evidence that Plaintiff must miss two or three days of work per month for medical appointments. While her medical records show that she had frequent medical appointments (including 11 trips to the emergency room in one year), not all were related to her impairments, and some of her conditions (HIV and Hepatitis C) appear to have stabilized by 2014 or were being managed by medication as found by the

ALJ. (Tr. 816, 820) Specifically, Plaintiff was treated for Hepatitis C during 2013 requiring monthly appointments but the treatment was completed in early 2014. (Tr. 779-802)

Plaintiff's medical records also show that many of her appointments were not due to her impairments but the result of various accidents and acute injuries (*e.g*., a bus accident (Tr. 338, 506); a burn on her hand (Tr. 1517); a motor vehicle accident (Tr. 1484); a car that ran over her leg (Tr. 1463); a dog that knocked her down (Tr. 1454); an incident where she was pushed down on her tailbone (Tr. 1414); several ankle injuries (Tr. 1536-1547, 1565, 1589); lower back pain after being thrown from a horse (Tr. 976); and an attack by a deer (Tr. 965)). The Plaintiff's medical records do not support her argument that she must go to the doctor two or three times per month due to her medical impairments (*i.e.*, HIV, Hepatitus C, and depression).

B.     DR. STATLER'S OPINION

Plaintiff argues the ALJ erred by not giving enough deference to the opinions of Plaintiff's long-standing doctor, Dr. Statler. On June 3, 2013, Dr. Statler wrote:

> Jennifer Dooley is currently a patient of mine and she has started Interferon treatments due to Hepatitus C. She also has a diagnosis of HIV and is taking multiple medications for this. Due to her multiple medical conditions and multiple medications her immune system will be chronically suppressed.

(Tr. 706) On October 7, 2014, Dr. Statler wrote:

> I am writing in regards to patient Jennifer Dooley, DOB 1/15/77. Due to her diagnosis of Hepatitis C, HIV and Bipolar Disorder she is unable to be gainfully employed. She is also undergoing further testing for her liver. She has multiple doctors appointments and treatments due to all her diagnosis.

(Tr. 1534) Plaintiff argues that the medical evidence cited by the ALJ as inconsistent with Dr. Statler's opinions did not in fact undermine her opinions. (DE #13 at 22-23) Plaintiff also argues that the ALJ should not have relied on the opinions of state agency doctors who never examined Plaintiff and only read some but not all of her medical records. (DE #13 at 23) Plaintiff asserts the ALJ should not have replaced the opinion of Dr. Statler with his own inferences drawn from the medical records in the absence of any other evidence from treating or examining physicians. (DE #13 at 24-25)

The Court finds the ALJ appropriately gave little weight to Dr. Statler's conclusory statement that Plaintiff could not be gainfully employed because it is inconsistent with other evidence in the record. The Eighth Circuit Court of Appeals has stated, "[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir.2010) (quotation omitted). Additionally, "[i]t is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000). *See also Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015) ("A treating physician's opinion should be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."). Finally, a medical source opinion that an applicant is disabled or unable to work involves an issue reserved for the Commissioner

and should therefore not be given controlling weight. *See Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005) (citations omitted).

In discounting Dr. Statler's opinion, the ALJ cited Dr. Statler's 2015 notes indicating that Plaintiff's HIV and Hepatitis C were being managed by treatment. (Tr. 821) The ALJ found that Plaintiff's HIV had been treated conservatively, that her treating physician had closely monitored and treated any symptoms, and that she had not been compliant with her HIV medications but suffered no setbacks as a result. (Tr. 816-817) The ALJ also noted that a pulmonary function study conducted in July 2014 showed normal spirometry and lung volumes. *Id.* He also noted that the record showed her Hepatitis C had stablized. *Id.* The record reflects that Plaintiff's liver scans were stable showing one lesion that had been there since 2009. (Tr. 490, 970, 1317) Finally, the ALJ found that subsequent to Dr. Statler's October 2014 letter, Plaintiff was seen for isolated reasons such as ankle pain and the flu, but had a normal chest x-ray and CT scan and a normal physical exam. *Id.*

Given the conclusory nature of Dr. Statler's letters and the conflicting evidence in the Plaintiff's medical records, it was not improper for the ALJ to give greater weight to the opinions of non-examining state agency doctors and the opinion of Dr. Vowell where those opinions were consistent with the Plaintiff's medical records. Contrary to Plaintiff's arguments, the ALJ was not required to further develop the record where the medical records presented provide sufficient evidence to make a decision on disability. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011). In this case, the record contains evidence from both

9

treating and examining physicians in addition to the non-examining state agency doctors that Plaintiff's medical conditions were stable and would not prevent Plaintiff from working. Importantly, the ALJ specifically relied on the opinion of examining physician Dr. Vowell who concluded that Plaintiff could "perform activities of daily living, communicate and interact in a socially adequate manner, and attend and sustain concentration on basic tasks." (Tr. 820)

### C. MENTAL IMPAIRMENTS

Plaintiff asserts that the limitations the ALJ imposed on Plaintiff's ability to work did not properly take into account the Plaintiff's long struggle with bipolar disorder, anxiety, and depression. (DE #13 at 25-26) Plaintiff asserts that the ALJ only gave Dr. Vowell's opinion some weight while not accounting for his findings regarding Plaintiff's difficulty coping efficiently with stress and her limitations in attention and concentration. (DE #13 at 27) Plaintiff further asserts that the ALJ wrongly discounted the Plaintiff's Global Assessment of Functioning (GAF)[6] scores, and that while the GAF scale has no direct correlation with the mental disorders listings at step three of the sequential analysis, the scores are relevant in determining the claimaint's mental RFC at step four of the analysis. (DE #13 at 28-29) Finally, Plaintiff argues that the ALJ wrongly discounted the severity of Plaintiff's mental limitations based on her noncompliance with medications. (DE #13 at 29)

---

[6] "The GAF is a numeric scale used to rate social, occupational, and psychological functioning 'on a hypothetical continuum of mental-health illness.'" *Mabry v. Colvin,* 815 F.3d 386, 391 n. 6 (8th Cir. 2016) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 937 n. 1 (8th Cir. 2009)). The scale ranges from zero to one hundred. *Id.* The most recent edition of the DSM discontinued use of the GAF scale. *See* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. Am. Psychiatric Ass'n 2013).

The ALJ considered the Plaintiff's GAF scores and gave them an appropriate weight. As the Eighth Circuit Court of Appeals has noted, the agency has given GAF scores limited importance in recent years. *Nowling v. Colvin*, 813 F.3d 1110, 1116 (8th Cir. 2016). While GAF scores may be relevant to a determination of disability based on mental impairments, *see Pate-Fires v. Astrue*, 564 F.3d 935, 944-45 (8th Cir. 2009), "an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010) (quotation omitted). In this case, the ALJ considered Plaintiff's scores of 40 and 50-60 but found that "the GAF ratings alone, which are in part based on [Plaintiff's] subjective statements, are not fully indicative of the [Plaintiff's] conditions." (Tr. 820) Plaintiff's scores are also consistent with the ALJ's finding that Plaintiff has moderate limitations in activities of daily living and maintaining social functioning, concentration, persistence, or pace. (Tr. 818) *See also Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (a history of GAF scores of between 52 and 60 was consistent with a finding of moderate limitations).

In making his determination, the ALJ gave some weight to both the state agency medical consultant and the state agency psychological consultant, both of whom took into account Plaintiff's limitations associated with Bipolar Disorder. (Tr. 820-21) The ALJ also gave some weight to Dr. Vowell's opinion that showed Plaintiff was depressed and tearful but generally appropriate. (Tr. 821) Dr. Vowell also considered the Plaintiff's non-compliance with mental health medication and problems with concentration, but found she

11

had normal persistence and pace at tasks. *Id.* Plaintiff contends that her noncompliance was a justifiable symptom of her mental impairments, citing *Pate-Fires*, 564 F.3d 935. However, *Pate-Fires* is distinguishable because there is little or no evidence expressly linking Plaintiff's mental limitations to her noncompliance. Rather, Plaintiff stated she did not like the side effects caused by her medication. (Tr. 819)

The ALJ also concluded that Plaintiff's mental impairments were not significant enough to interfere with her ability to work and noted she had no mental health complaints from late September 2014 through February 2015. (Tr. 819) Plaintiff's medical records support this finding.

In sum, the ALJ gave appropriate weight to Plaintiff's GAF scores and evidence regarding her mental impairments and concluded that she could not perform a full range of sedentary work and was impeded by additional limitations. (Tr. 822) The ALJ asked the VE whether jobs exist in the national economy for a claimant like Plaintiff, and he found two jobs she could perform. (Tr. 822-23) The ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.

## Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record that contradicts his findings. The test is whether there is substantial evidence on the

record as a whole which supports the decision of the ALJ. *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record and concludes there is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error. Accordingly, for the reasons set forth above, it is recommended that the final decision of the Commissioner be affirmed.

IT SO ORDERED this 8th day of March, 2017.

_____
UNITED STATES MAGISTRATE JUDGE